# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE W. CAMPBELL,<br><br>                  Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:09-cv-00733 OWW GSA<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

## **BACKGROUND**

Plaintiff Terrence W. Campbell ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

//

//

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 10 & 12.

1

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his application on or about September 7, 2005, alleging disability beginning April 29, 2005.  AR 72.  His application was denied initially (AR 48-52) and on reconsideration (AR 39-43); thereafter Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 39.  ALJ Plauche F. Villere, Jr. held a hearing on August 14, 2007 (AR 172-195), and issued an order denying benefits on April 12, 2008.  AR 12-24.  Plaintiff requested a review of the decision (AR 10-11) and on February 26, 2009, the Appeals Council denied review.  AR 4-6.

### Hearing Testimony

ALJ Villere held a hearing on August 14, 2007, in Sacramento, California.  Plaintiff appeared and testified.  Plaintiff was represented by attorney Charles Oren.  AR 172-195.

Plaintiff's date of birth is March 13, 1953; he was 54 years old on the date of the hearing.  AR 177.  He is five feet, eight inches tall and weighs 250 pounds.  AR 192.  He has a twelfth grade education and can read and write.  AR 179.  Plaintiff lives at home with his wife and five-year-old granddaughter, of whom he and his wife have permanent guardianship.  AR 191.

When asked about his work history, Plaintiff testified that he last worked as an order man for Certified Grocers, selecting orders at a dry grocery warehouse.  AR 180.  The job required heavy lifting.  AR 181.  He stopped working there in April 2005 because he was "unable to pace [himself] for the production standard required."  AR 179, 181.  His back hurt too much and his hands "were unable to grasp."  AR 181.  Even if Plaintiff's job did not require heavy lifting, he still would not be able to do it now because his hands are weak and fatigued.  AR 181.

Degenerative disc disease makes it difficult for Plaintiff to stand, stoop, bend, and lift.  AR 182.  The pain is aggravated with physical activity and excruciating if he has to bend over.  AR 190, 193.  Plaintiff takes Vicodin for his back pain.  AR 187.  However, he does not need a cane or brace.  AR 177.  Plaintiff's doctor recommended swimming to treat his back pain.  He has a pool and swims "pretty much every day" for 15 or 20 minutes.  AR 184, 194.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

In response to the ALJ's inquiry about performing a job without heavy lifting, Plaintiff stated he could not do it because he has had problems with his hands since his carpal tunnel surgery in 1998. AR 181-182, 187. The surgery was successful but the side effects are fatigue and lack of "grasping power." AR 182. Plaintiff cannot do any type of repetitive work with his hands, such as writing or lifting, for more than 10 or 15 minutes. AR 181, 186. Plaintiff can write a quarter to a half page before he has to stop and take a break. AR 187. He takes Motrin to relieve the pain. AR 187.

With regard to the diagnosis of Type II diabetes, Plaintiff's condition is controlled through oral medication. AR 182-183. Plaintiff also has high blood pressure and high cholesterol, which are also controlled through medication. AR 183. Additionally, Plaintiff has diverticulitis, which is controlled through a high-fiber diet. AR 183. Plaintiff also has peripheral neuropathy, which is a burning sensation in his leg that occurs two to three times per week for about an hour, and is extremely uncomfortable. AR 193-194. Plaintiff used to have a problem with the use of marijuana but quit twelve years ago. AR 177-178. He does not smoke tobacco. AR 178.

Side effects of Plaintiff's medication include dizziness, headaches, upset stomach, diarrhea, and constipation. AR 189-190, 192. The dizziness is cause by Plaintiff's blood pressure medication and occurs on a daily basis. AR 183, 192. The diarrhea occurs two or three times per week. AR 190. The headaches occur once or twice per week. AR 189. Once or twice per month he has "migraine type" headaches, caused by stress. AR 189. When he gets the "migraine type" headaches he is "completely incapacitated," and will take medication and try to sleep in a quiet dark room. Those headaches typically last "a day." AR 189.

Plaintiff can lift approximately 10 pounds but drops things occasionally. AR 186. He can stand for 15 minutes before needing to sit, recline, or lie down. AR 194. He can sit for 30 minutes at one time and can walk approximately 300 to 500 feet, no more than 10 to 15 minutes, before he has to take a break. AR 190. Plaintiff can mow the lawn on a "good day." AR 187. His bad days are approximately every other day. AR 187-188. On a bad day, even after taking Vicodin, Plaintiff described his pain as an eight out of ten. AR 188. On a bad day, he lies down,

1  sits in a recliner, sleeps, and avoids physical labor of any sort, including cleaning around the

2  house.  AR 188.

3      When asked about daily activities that he can perform, Plaintiff testified that he does not

4  need assistance with personal hygiene and grooming, however, he cannot put on or take off his

5  own shoes.  AR 179-180, 193.  He cooks, cleans up around the house, and does light grocery

6  shopping.  AR 180.  Plaintiff also looks after his granddaughter.  AR 191.  He can drive for one

7  hour before he has to stop and walk around to take a break.  AR 180, 191.

8  **Medical Record**

9      The entire medical record was reviewed by the Court.  A summary of the reports and

10  treatment notes is provided below.

11      ***Xing-Jian Lu, M.D.***

12      On August 12, 2004, Plaintiff was seen by Xing-Jian Lu, M.D., his primary treating

13  physician, for complaints of bilateral foot problems, numbness and tingling in his feet and legs,

14  and severe dry cough.  Dr. Lu diagnosed Plaintiff with diabetes, hypertension, and high

15  cholesterol.  AR 117-118.

16      On September 3, 2004, Dr. Lu diagnosed Plaintiff as having Diabetes Mellitus Type 2

17  and obesity, and recommended "DM class" and a weight management program.  Dr. Lu noted

18  that Plaintiff's blood sugar continued to fluctuate and Plaintiff had not attended DM class yet.

19  AR 115-116.

20      On April 29, 2005, Plaintiff was seen for complaints of bilateral lower back pain.  The

21  pain had existed for three to five days but was not precipitated by injury.  AR 109.  Dr. Lu

22  prescribed Vicodin and Robaxin and put Plaintiff on light duty for one month.  AR 110.  At the

23  time, Plaintiff was five feet, eight inches tall, weighed 250 pounds, and his body mass index

24  ("BMI") was 40.  AR 109.

25      On May 31, 2005, Plaintiff was again seen for complaints of lower back pain.  Plaintiff

26  requested an extension of light duty.  AR 105.  Dr. Lu's examination revealed tenderness in the

27  sciatic and lower lumbar paraspinal areas.  The doctor ordered an X-ray, refilled Plaintiff's

28  Vicodin prescription, and referred him to physical therapy.  AR 106.

On June 30, 2005, Plaintiff reported no change in his back pain and requested another extension of light duty.  AR 103.  Dr. Lu placed Plaintiff on light duty until August 31, 2005.  The doctor also noted that Plaintiff declined physical therapy but said he would do water therapy.  AR 104.

On July 15, 2005, Plaintiff was seen by Lan Zhang, M.D., another Kaiser Permanente physician, for complaints of nausea caused by his medications, yet Plaintiff did not want to change medications.  AR 102.

June 25, 2007 and July 9, 2007 notations indicate that Plaintiff was noncompliant with "all labs outreach."  AR 137-138.

### *Philip Seu, M.D.*

On December 8, 2005, Philip Seu, board certified surgeon, performed a comprehensive internal medicine evaluation of Plaintiff.  AR 122-125.  Plaintiff's chief complaints were low back pain and carpal tunnel syndrome.  AR 122.  Dr. Seu reviewed X-ray reports dated June 1, 2005, and August 23, 2005, as well as medical reports dated July 11, 2005, and August 31, 2005.  AR 122.

Plaintiff reported that he had low back pain for three to four years as the result of heavy lifting.  He complained of pain across his lower back with occasional radiation to his left buttock and left upper leg.  AR 122.  Plaintiff stated that he was treated with pain medication and tries to swim everyday as recommended.  AR 122.  Plaintiff also reported that he had carpal tunnel surgery on both wrists, which eliminated the numbness, however, he still experiences fatigue in his hands after 10 to 15 minutes of working with them.  AR 122.  Plaintiff indicated to the doctor that he spends most of his time at home.  He takes the trash out, babysits, swims, and drives.  He can walk approximately 500 yards, but he cannot lift heavy objects.  AR 123.

Dr. Seu's findings indicate that Plaintiff was obese, moved slowly, and had difficulty bending over and getting on and off the examination table.  AR 123.  Plaintiff was five feet, eight inches in height and weighed 274 pounds.  AR 123.  Dr. Seu's general findings included decreased range of motion of the lumbar spine, positive bilateral lumbar tenderness, and healed surgical incisions on both wrists.  AR 124.  The doctor opined that Plaintiff's low back pain was

1   due to lumbosacral strain.  AR 125.  The X-rays showed minimal L1-L2 findings.  AR 122.  Dr.

2   Seu noted "no objective findings" regarding Plaintiff's carpal tunnel syndrome, only a subjective

3   fatigue after prolonged use.  AR 125.

4        Dr. Seu determined that Plaintiff could stand and/or walk six hours in an eight-hour day

5   with more frequent breaks, and could sit without restriction.  He could lift 20 pounds

6   occasionally and 10 pounds frequently.  Plaintiff has postural limitations due to decreased range

7   of motion in his back, yet Dr. Seu found no manipulative or environmental limitations.  AR 125.

8        ***Nazar R. Alsaffar, M.D.***

9        On February 9, 2006, Nazar R. Alsaffar, M.D. performed an MRI of Plaintiff's lumbar

10  spine at the request of Dr. Lu.  Dr. Alsaffar noted significant degenerative disc disease at L1-2

11  with posterior spurs and bulging disc, probably causing mild degree of spinal stenosis.  He found

12  no focal disc herniation and no significant spinal stenosis.  AR 150.

13       ***C. Lawlor, D.P.M***

14       On February 17, 2006, podiatrist C. Lawlor conducted a routine diabetic foot check of

15  Plaintiff.  Plaintiff complained of toenail fungus, indicating that he only walks barefoot or wears

16  flip flops.  AR 99.  Upon examination, Dr. Lawlor found no signs of infection; however, he noted

17  that Plaintiff's hygiene was poor and advised Plaintiff to wear socks and lace-up athletic shoes.

18  AR 108.

19       On April 28, 2006, Dr. Lawlor conducted another routine diabetic foot check.  He noted

20  minimal improvement.  The doctor also noted that Plaintiff wore flip flops again and that his feet

21  were very dirty and green from mowing the lawn in bare feet.  Dr. Lawlor told Plaintiff he was

22  low risk at that time, but that could change in the future if Plaintiff did not take better care of his

23  feet.  AR 145.

24       ***Michael M. Kiekhaefer, M.D.***

25       On August 21, 2006, neurologist Michael M. Kiekhaefer examined Plaintiff at the request

26  of Dr. Lu.  Dr. Kiekhaefer noted that the MRI showed relatively mild degenerative changes, at

27  L1-2, but no significant nerve root impingement and only mild spinal stenosis.  The doctor's

28  physical examination of Plaintiff revealed 5/5 motor strength in all extremities, bilateral deep

6

tendon reflexes in the upper and lower extremities, and normal toe/heel walking.  Plaintiff's

sensation was intact to light touch and pinprick in all extremities with the exception of decreased

pinprick at the left anterolateral proximal thigh.  Dr. Kiekhaefer found no need for surgery.  AR

143.  He diagnosed Plaintiff with chronic low back pain and meralgia paresthetica in the left

thigh.  Dr. Kiekhaefer encouraged weight loss and exercise but noted that Plaintiff refused a

physical therapy referral.  He also discussed with Plaintiff that he try a chronic pain medication,

but Plaintiff deferred.  AR 143.

### *Fariba Vesali, M.D.*

On October 4, 2007, Fariba Vesali, M.D. performed a comprehensive orthopedic

evaluation of Plaintiff.  AR 162-165.  Plaintiff complained of chronic low back pain, chronic

hand pain, and diabetes.  AR 162.  He stated that he has had lower back pain for 10 to 12 years,

that lifting more than a gallon of milk or walking more than 250 feet aggravates his pain, and that

sitting and raising his legs decreases the pain.  AR 162.  Plaintiff also stated that his hand pain

included fatigue and numbness and had been present since the early 1990s.  He underwent carpal

tunnel surgery in 2000 with some improvement in numbness.  AR 162.

Dr. Vesali noted Plaintiff was five feet, seven inches tall and weighed 263 pounds.  His

gait was normal and he had no difficulty getting on and off the examination table.  AR 163.  Dr.

Vesali noted decreased range of motion and tenderness in Plaintiff's lumbar spine.  Straight leg

raising was negative bilaterally.  Axial compression of the hip caused increased low back pain.

Otherwise, the findings were unremarkable.  AR 165.  Plaintiff was diagnosed with chronic low

back pain, chronic hand pain, status-post carpel tunnel release, diabetes, and malignant

melanoma on chest (status-post excision of tumor).  AR 164-165.

Dr. Vesali determined that Plaintiff should be able to sit for six hours and walk for six

hours in an eight-hour day with normal breaks.  He does not need an assistive device to walk.  He

should be able to lift and carry 25 pounds occasionally and 10 pounds frequently.  The doctor did

not identify any postural limitations on bending, stooping, or crouching.  Additionally, he found

no manipulative limitations on reaching, handling, feeling, or grasping.  Neither did the doctor

identify any visual, communicative, or workplace environmental limitations.  AR 165.

On October 7, 2007, Dr. Vesali completed an SSA Medical Source Statement. AR 155-160. Dr. Vesali opined that Plaintiff could lift or carry 10 pounds frequently and 20 pounds occasionally. Dr. Vesali found Plaintiff could sit, stand, or walk for two hours each, without interruption at one time. Further, the doctor found he could sit, stand, or walk for a total of six hours each, in an eight-hour day. AR 156. Dr. Vesali found Plaintiff could reach, handle, finger, feel, push, and pull frequently with either hand and operate foot controls frequently with either foot. AR 157. He could occasionally climb, balance, and crawl, and could frequently stoop, kneel, and crouch. The doctor found he could frequently tolerate various environmental conditions. AR 158-159. Lastly, Dr. Vesali opined that Plaintiff could also shop, travel alone, ambulate, walk a block, use public transportation, climb steps, prepare meals, care for personal hygiene, and sort, handle, and use paper/files. AR 160.

### *Physical RFC Assessment*

On December 30, 2005, state agency physician S. A. Jaituni, M.D. completed a Physical Residual Functional Capacity ("RFC") Assessment of Plaintiff. AR 126-133. The doctor determined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and sit, stand and/or walk for a total of about six hours in an eight-hour day. The doctor also determined that Plaintiff could push and/or pull (including operate hand and/or foot controls) without restriction, could frequently balance, kneel, and crouch, and could occasionally climb stairs, stoop, and crawl. AR 127-128. Dr. Jaituni noted no manipulative, visual, communicative, or environmental limitations. AR 129-130.

### **ALJ's Findings**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since April 29, 2005, and had the severe impairments of status post carpal tunnel release in 2000, lumbosacral strain, diabetes, malignant melanoma on chest (status post excision of tumor), and obesity. AR 17. Nonetheless, the ALJ determined that the severe impairments did not meet or exceed one of the listed impairments. AR 19.

The ALJ reviewed the medical evidence and determined that Plaintiff had the RFC to perform the full range of light work. The ALJ found that Plaintiff could occasionally climb

stairs, ramps, ladders, or scaffolds, could occasionally balance or crawl, and could frequently

stoop, kneel, or crouch.  AR 20.  The ALJ also found that Plaintiff was unable to perform any of

his past relevant work, and that because it was unskilled, transferability of job skills was not an

issue.  AR 23.  The ALJ identified Plaintiff as "closely approaching advanced age" and noted that

he had at least a high school education and could communicate in English.  AR 23.  The ALJ

considered Plaintiff's age, education, work experience, and RFC, and concluded that jobs exist in

significant numbers in the national economy that Plaintiff could perform.  AR 23.  Accordingly, a

finding of "not disabled" was made, as defined in the Social Security Act.  AR 24.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision

to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

the Court must determine whether the decision of the Commissioner is supported by substantial

evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

401.  The record as a whole must be considered, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993,

995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

This Court must uphold the Commissioner's determination that the claimant is not disabled if the

Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in

substantial gainful activity due to a medically determinable physical or mental impairment which

has lasted or can be expected to last for a continuous period of not less than twelve months.  42

U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform his past relevant work; and (5) could perform jobs that exist in significant numbers in the national economy.  AR 10-12.

Here, Plaintiff argues that: (1) the ALJ's step-two finding that Plaintiff's only severe back impairment is "lumbosacral strain" is not supported by substantial evidence; (2) the ALJ's evaluation of Plaintiff's obesity is based on the application of incorrect legal standards; (3) the ALJ erred in failing to call a vocational expert ("VE"); (4) the ALJ improperly rejected the opinions of Drs. Seu and Vesali; (5) the ALJ's mechanical application of the grids is reversible error; and (6) the ALJ improperly rejected Plaintiff's allegations.

## DISCUSSION

### A.    *ALJ's Step-Two Findings*

Plaintiff contends that the ALJ's finding at step two of the sequential evaluation - that Plaintiff's only severe back impairment is "lumbosacral strain" - is not supported by substantial evidence.  Defendant counters that the ALJ properly found that Plaintiff's lumbosacral strain was severe.

1    Specifically, Plaintiff points out that "lumbosacral strain" was diagnosed by Dr. Seu, who

2    did not review Plaintiff's February 9, 2006 MRI.  This is correct.  However, the ALJ did not rely

3    solely on Dr. Seu's opinion in making his finding at step two.  AR 17-19.  The ALJ considered

4    Plaintiff's February 9, 2006 MRI, as well as the opinion of examining physician, Dr. Kiekhaefer,

5    who did review the February 9, 2006 MRI.  AR 18.

6    The ALJ states:

7        In February of 2006, an MRI of [Plaintiff's] lumbar spine showed significant
         degenerative disease at L1-2 with posterior spurs and bulging disc causing mild degree of
8        spinal stenosis.  However, there was no evidence of focal disc herniation or any
         significant spinal stenosis.
9        [¶]
         In August of 2006, [Plaintiff] attended a neurological consultation with Dr.
10       Michael M. Kiekhaefer.  The doctor noted that his MRI only showed relatively mild
         degenerative changes with no significant nerve root impingement.  He had no surgical
11       pathology.

12   AR 18 (citations omitted).

13       At the second step of the sequential evaluation of disability, the ALJ determines whether

14   a claimant has a severe impairment or combination of impairments.  A severe impairment is one

15   that significantly limits the claimant's physical or mental ability to do basic work activities.  20

16   C.F.R. § 1520(c).  The Ninth Circuit has clearly articulated that an impairment or combination of

17   impairments may be found to be not severe only if the evidence establishes a slight abnormality

18   that has no more than a minimal effect on an individual's ability to work.  *Smolen v. Chater*, 80

19   F.3d 1273, 1290 (9th Cir. 1996).

20       Here, the ALJ determined that Plaintiff suffered from a "severe" medically determinable

21   impairment or combination of impairments which were more than slight abnormalities and had

22   more than a minimal effect on his ability to work.  The ALJ described these impairments as

23   "status post carpal tunnel release in 2000, lumbosacral strain, diabetes, malignant melanoma on

24   chest (status post excision of tumor), and obesity."  AR 17.

25       Plaintiff argues that had the ALJ properly recognized the nature and severity of his

26   lumbar spine impairment at step two, both that impairment and Plaintiff's obesity would have

27   warranted greater restrictions than the ALJ found.  Contrary to Plaintiff's argument, the ALJ's

28   finding at step two that Plaintiff suffered from "lumbosacral strain" did not preclude a RFC to

perform less than the full range of light work.  As noted, the analysis at each step is separate and

distinct and one finding does not dictate any particular outcome.  A person found to have a

"severe" impairment at step two may still be found to have a RFC to perform light work.  A

"severe" impairment at step two is merely an impairment or combination of impairments that has

more than a minimal effect on the claimant's abilities to perform basic work activities.  *See*

Social Security Ruling ("SSR") 85-28.[3]  The Commissioner has stated in SSR 85-28 that "if an

adjudicator is unable to determine clearly the effect of an impairment or combination of

impairments on the individuals's ability to do basic work activities, the sequential evaluation

should not end with the non-severe evaluation step."  Thus, it is well settled that step two is a "de

minimis screening device [used] to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  An

ALJ may only find that a claimant lacks a medically severe impairment or combination of

impairments when such a conclusion is "clearly established by medical evidence."  SSR 85-28.

Further, while a claimant's statements about pain or other symptoms do not alone establish

disability, such evidence, in combination with medical signs and laboratory findings

demonstrating a medical impairment, is clearly relevant.  *See* 20 C.F.R. § 416.929(a) (2010).

Where a claimant provides testimony in the form of subjective pain reports or other symptoms,

and there is no evidence of malingering, such relevant evidence may only be rejected under a

"clear and convincing" standard.  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005),

citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

      The ALJ's finding that Plaintiff's status post carpal tunnel release in 2000, lumbosacral

strain, diabetes, malignant melanoma on chest (status post excision of tumor), and obesity,

passed this minimal threshold did not dictate any particular outcome, but rather allowed the ALJ

to go further with the sequential evaluation where he could consider both medical and vocational

evidence.

---

[3] Social Security Rulings are issued to clarify the Commissioner's regulations and policy.  They are not published in the federal register and do not have the force of law.  However, the court is required to give deference to the Commissioner's interpretation of the Regulations.  *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991).  The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in SSR 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-154, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

1      Thus, the ALJ's decision was free of error, and supported by substantial evidence.

2      **B.**    ***Plaintiff's Obesity***

3      Plaintiff argues that the ALJ's evaluation of his obesity is based on the application of

4 incorrect legal standards.  Specifically, Plaintiff argues that the ALJ failed to comply with SSR

5 02-1p when evaluating the impact of his obesity on his overall functioning.  Defendant counters

6 that the ALJ properly considered Plaintiff's obesity.

7      Plaintiff's argument has little merit.  First, Plaintiff attempts to draw a distinction

8 between the ALJ's finding of a BMI of less than 40 and Plaintiff's calculation of a BMI of 40 or

9 greater.  Although this accurately reflects the cutoff between obesity levels II and III, a finding of

10 level III obesity does not prescribe a finding that Plaintiff's obesity, in combination with his other

11 impairments, increases the severity or functional limitations of Plaintiff's other impairments.  *See*

12 SSR 02-1p.

13         The *Clinical Guidelines* recognize three levels of obesity.  Level I includes BMIs
         of 30.0-34.9.  Level II includes BMIs of 35.0-39.9.  Level III, termed "extreme" obesity
14      and representing the greatest risk for developing obesity-related impairments, includes
         BMIs greater than or equal to 40.  These levels describe the extent of obesity, but they do
15      not correlate with any specific degree of functional loss.

16 SSR 02-1p.

17      Second, Plaintiff argues that the ALJ has failed to comply with SSR 02-1p because the

18 ALJ asserted, in support of his finding, that there was no evidence in the record to show that

19 "[Plaintiff] has followed any type of diet to control his caloric intake, or any sustained exercise

20 program to combat the effects of obesity."  AR 19.

21         According to the Social Security Rules, in evaluating obesity to determine a
         claimant's RFC, the ALJ's assessment "must consider an individual's maximum
22      remaining ability to do sustained work activities in an ordinary work setting on a regular
         and continuing basis."  SSR 02-01p (2002).  As with other impairments, the ALJ should
23      explain how he determined whether obesity caused any physical or mental impairments.
         *See Id.*

24

25 *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

26      Here, the ALJ did not rely solely on Plaintiff's failure to follow prescribed treatment in

27 his analysis, as Plaintiff contends.  AR 19.  He acknowledged Plaintiff's obesity, as reflected in

28 the medical record.  AR 19.  He also found that:

1
2
3
4

> The record does not show evidence that [Plaintiff's] obesity has led to such complications as peripheral vascular disease, or hypertensive cardiovascular disease. Although he complained of multiple body pain symptoms, that could be exacerbated by his obesity, the record shows no evidence of debilitating arthritis and limitation of function of weight-bearing joints. Therefore, [Plaintiff's] obesity in combination with his other impairments does not increase the severity or functional limitations of those other impairments.

5    AR 19.

6    The ALJ proceeded to weigh the evidence and concluded that Plaintiff had the RFC to

7    perform the full range of light work, despite his obesity. AR 20-23. Plaintiff has not proffered

8    on appeal any functional limitations as a result of his obesity that the ALJ has failed to consider,

9    nor is there any evidence of such functional limitations in the record. Thus, the ALJ's

10   determination of the effects of Plaintiff's obesity on his other impairments is consistent with SSR

11   02-1p and free of error.

12              *C.      VE Testimony*

13   Plaintiff argues that the ALJ erred in failing to obtain testimony from a VE. More

14   particularly, Plaintiff contends that the existence of significant non-exertional restrictions in

15   Plaintiff's RFC precluded the ALJ's exclusive use of the medical-vocational guidelines ("the

16   grids") and required the testimony of a VE to reach a finding of disability. Defendant contends

17   that the ALJ properly applied the grids.

18   The claimant has the initial burden of proving the existence of a disability within the

19   meaning of the Social Security Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The

20   claimant establishes a prima facie case of disability by showing that a physical or mental

21   impairment prevents him or her from engaging in his or her previous occupation. *Gallant v.*

22   *Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

23   However, once the claimant establishes a prima facie case of disability, the burden of going

24   forward with the evidence shifts to the Secretary. *Hammock v. Bowen*, 867 F.2d 1209 (9th Cir.

25   1989). The Secretary bears the burden of establishing the existence of alternative jobs available

26   to the claimant, given his or her age, education, and medical-vocational background. In an

27   appropriate case, the Secretary may meet this burden through application of the medical-

28

1  vocational guidelines set forth in the regulations.[4]  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2

2  ("Appendix 2"); *Heckler v. Campbell*, 461 U.S. 458 (1983); *Odle v. Heckler*, 707 F.2d 439, 440

3  (9th Cir. 1983).  If the guidelines do not accurately describe a claimant's limitations, the

4  Secretary may not rely on them alone to show availability of jobs for the claimant.  *Desrosiers v.*

5  *Secretary*, 846 F.2d 573 (9th Cir. 1988).  However, the mere allegation of the presence of a non-

6  exertional impairment is not sufficient to preclude application of the guidelines.  Such non-

7  exertional impairment must be found to significantly limit the range of work permitted by a

8  claimant's exertional limitations before the Secretary will be required to obtain expert vocational

9  testimony regarding the availability of other work.  *See, e.g., Polny v. Bowen,* 864 F.2d 661 (9th

10  Cir. 1988); *Burkhart v. Bowen*, 856 F.2d 1335 (9th Cir. 1988); *Razey v. Heckler*, 785 F.2d 1426,

11  1430 (9th Cir. 1986) (modified 794 F.2d 1348 (1986)); and *Perminter v. Heckler*, 765 F.2d 870

12  (9th Cir. 1985).

13       Here, the ALJ found that Plaintiff had the RFC to perform the full range of light work,

14  despite the non-exertional limitations that Plaintiff could occasionally climb stairs, ramps,

15  ladders, or scaffolds, could occasionally balance or crawl, and could frequently stoop, kneel, or

16  crouch.  AR 20.  The ALJ applied the grids as a framework, according to SSRs 83-12, 83-14, and

17  85-15, and determined that jobs exist in significant numbers in the national economy that

18  Plaintiff can perform.  AR 23-24.  SSR 83-14 states, "[T]here are nonexterional limitations or

19  restrictions which have very little or no effect on the unskilled light occupational base.  Examples

20  are inability to ascend or descend scaffolding, poles, and ropes [and] inability to crawl on hands

21  and knees."

22       SSR 85-15 states:

23       Limitations in climbing and balancing can have varying effects on the
       occupational base, depending on the degree of limitation and the type of job.  Where a
24       person has some limitation in climbing and balancing and it is the only limitation, it
       would not ordinarily have a significant impact on the broad world of work.
25       If a person can stoop occasionally . . . the sedentary and light occupational base is
       virtually intact.  This is also true for crouching.  [C]rawling on hands and knees and feet

26

27       [4] For any given combination of factors (residual functional capacity, age, education, and work experience),
28  the guidelines direct a conclusion of disability or nondisability when they accurately describe a claimant's particular
   limitations.

is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work.  This is also true of kneeling.

*See also, Mitchell v. Astrue*, 2009 WL 542216 (C.D. Cal.) (ALJ properly determined that claimant's non-exertional limitations, i.e., her inability to perform more than occasional climbing, balancing, stooping, kneeling, crouching and crawling, did not significantly limit the range of light exertional work.)

Here, the ALJ considered Plaintiff's non-exertional impairments and properly determined that they did not significantly limit the range of light work that Plaintiff could perform.  Plaintiff has not cited to any facts in the record that support a finding that his non-exertional limitations significantly limited the range of work permitted.  In addition, Plaintiff has failed to provide legal authority that supports a requirement of VE testimony in circumstances where a non-exertional limitation does not significantly limit the occupational base.

Plaintiff also argues that the ALJ erroneously relied on the state agency determination that Plaintiff could perform specific unskilled light work such as cleaner, housekeeper, photocopying machine operator, or collator operator, but did not articulate the incidence of such work in the region in which Plaintiff lives or several other regions of the country.  *See* AR 23-24.

When determining that unskilled sedentary, light, or medium jobs exist in significant numbers in the national economy, the ALJ may take administrative notice of job data from many sources, including occupational analyses prepared for the Social Security Administration by various State employment agencies.  20 C.F.R. § 416.966(d); *Smith v. Astrue*, 2010 WL 1558728 (E.D.Cal.).  In *Smith*, the court held:

> Having relied on the grids, the ALJ was not required to give specific examples of potential positions and the number of such positions in the national economy.  This renders Plaintiff's argument that the ALJ improperly cited the analyst's findings moot.  Contrary to Plaintiff's suggestion, the ALJ did not rely solely on the positions identified by the analyst, but instead used the occupational information to support the conclusion directed by the grids.

*Smith*, at *7.  This Court has determined that application of the grids was appropriate in this case and VE testimony was not required.  Thus, the state agency determination is irrelevant.

1    In sum, the ALJ appropriately relied on the grids in finding Plaintiff "not disabled," and

2    the ALJ did not err by failing to obtain the testimony of a VE.

3        **D.      Medical Opinion Evidence**

4        Plaintiff argues that the ALJ improperly rejected the opinions of examining physicians

5    Drs. Seu and Vesali.  Specifically, Plaintiff argues that portions of the examining physicians'

6    opinions were not discussed by the ALJ in his RFC finding, and thus the ALJ's failed to give

7    "clear and convincing" or "specific and legitimate" reasons, supported by substantial evidence in

8    the record, for rejecting those portions of the opinions.  Defendant counters that the ALJ properly

9    considered the medical opinion evidence.

10       Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

11   who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

12   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

13   physicians).  As a general rule, more weight should be given to the opinion of a treating source

14   than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

15   647 (9th Cir. 1987).  At least where the treating doctor's opinion is not contradicted by another

16   doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

17   1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

18   doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

19   reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

20   F.2d 499, 502 (9th Cir. 1983).

21       The opinion of an examining physician is, in turn, entitled to greater weight than the

22   opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

23   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

24   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

25   uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  And like the opinion

26   of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

27   can only be rejected for specific and legitimate reasons that are supported by substantial evidence

28   in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

1    Here, the ALJ found as follows:

2         [T]he undersigned accords substantial weight to the opinions of consulting
     physicians, Dr. Philip Seu and Dr. Fariba Vesali. Dr. Vesali examined the claimant in
3    October of 2007 and as Dr. Seu did before him determined that [Plaintiff] could perform
     light work. Based upon his examination, Dr. Vesali, found that [Plaintiff] had decreased
4    range of motion in his lumbar spine with tenderness over the lumbar spine. However, his
     straight leg-raising test was negative bilaterally. Axial compression of his hip caused
5    increased low back pain, but there were no neurological deficits.
          Dr. Vesali assessed [Plaintiff] as able to walk six hours in an eight-hour day with
6    normal breaks. He did not need an assistive device for ambulation. Due to his low back
     pain, he should be able to lift and carry 25 pounds occasionally and 10 pounds frequently.
7    He had no postural limitation on bending, stooping, or crouching. He had no
     manipulative limitation on reaching, handling, feeling, and grasping. Nor were there
8    visual, communicative, or workplace environmental limitations.

9    AR 20 (citations omitted).

10   The ALJ accorded "substantial weight" to the examining physician opinions (AR 20),

11   consistent with legal authority. *Pitzer*, 908 F.2d at 506; *Gallant*, 753 F.2d at 1450. The ALJ did

12   not reject either opinion and thus was not required to provide "clear and convincing" or "specific

13   and legitimate" *See Pitzer*, 908 F.2d at 506; *Andrews*, 53 F.3d at 1043. Furthermore, the ALJ is

14   not required to comment on every detail in every report. As noted in *Vincent v. Heckler*, 739

15   F.2d 1393, 1394-1395 (9th Cir. 1984), "[t]he Secretary . . . need not discuss all evidence

16   presented to her. Rather, she must explain why 'significant probative evidence has been

17   rejected.'" Here, the evidence which the ALJ failed to discuss was neither significant nor

18   probative. Both physicians opined that Plaintiff could perform light work. Had the evidence

19   been significant or probative enough to affect the physicians' opinions of work Plaintiff could

20   perform, they would not have concluded that Plaintiff could perform light work.

21   In addition, although both physicians determined that Plaintiff could perform light work,

22   the ALJ imposed the additional nonexertional limitations that Plaintiff could occasionally climb

23   stairs, ramps, ladders, or scaffolds, could occasionally balance or crawl, and could frequently

24   stoop, kneel, or crouch. AR 20; *see also* AR 122-125, 162-165.

25   The ALJ accorded proper weight to the opinions of examining physicians Drs. Vesali and

26   Seu in determining that Plaintiff could perform light work. The ALJ's finding is supported by

27   substantial evidence.

28

18

1    ### E.    *Application of the Grids*

2        Plaintiff argues that the ALJ's mechanical application of the grids is reversible error.

3    Specifically, Plaintiff argues that his situation is a "borderline situation," thus precluding

4    mechanical application of the grids.  Defendant does not dispute that a borderline situation exists,

5    but counters that the ALJ was not obligated to apply the medical-vocational rule for the higher

6    age category.

7            We will not apply the age categories mechanically in a borderline situation. If you
        are within a few days to a few months of reaching an older age category, and using the
8        older age category would result in a determination or decision that you are disabled, we
        will consider whether to use the older age category after evaluating the overall impact of
9        all the factors of your case.

10   20 C.F.R. 404.1563(b).  The operative age is the age at the time of the Commissioner's final

11   decision.  *Russell v Bowen*, 856 F.2d 81, 83 (9th Cir. 1988).  Here, at the time of the ALJ's

12   decision, Plaintiff was two months and five days from reaching 55 years of age.  AR 24, 177.

13   Two months and five days is "within a few days to a few months."  This satisfies the first

14   requirement of a borderline situation under 20 C.F.R. 404.1563(b).

15       Plaintiff asserts that had the ALJ applied the grids to him as an individual of advanced

16   age (age 55 or older), Plaintiff would have been found disabled under Rule 202.04.  However,

17   this assertion is not necessarily correct.

18           If you are of advanced age (age 55 or older), and you have a severe impairment(s)
        that limits you to *sedentary* or *light work,* we will find that you cannot make an
19       adjustment to other work unless you have skills that you can transfer to other skilled or
        semiskilled work (or you have recently completed education which provides for direct
20       entry into skilled work) that you can do despite your impairment(s).

21   20 C.F.R. 404.1568 (emphasis in original).

22       Given the ALJ's finding that Plaintiff's past relevant work is unskilled (AR 23), a finding

23   of either "disabled" or "not disabled" could have been found under either Rule 202.04 or Rule

24   202.05, respectively.  This determination hinges on whether Plaintiff's education provides for

25   direct entry into skilled work.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  The record establishes

26   that the ALJ did not evaluate whether Plaintiff's education provides for direct entry into skilled

27   work.  AR 23-24.

28

1    If the ALJ finds that Plaintiff's education provides for direct entry into skilled work,

2    application of the higher age category would require a finding of "not disabled" and a borderline

3    situation would not exist.  If the ALJ finds that Plaintiff's education does not provide for direct

4    entry into skilled work, application of the higher age category would require a finding of

5    "disabled" and the second requirement of a borderline situation would be satisfied.

6    If a borderline situation exists, mechanical application of the grids is precluded.  20

7    C.F.R. 404.1563(b).  Defendant is correct in asserting that the ALJ is not required to use the

8    older age category.  However, the ALJ is required to "consider whether to use the older age

9    category after evaluating the overall impact of all the factors of [Plaintiff's] case." 20 C.F.R.

10   404.1563(b).  The regulations do not explicitly require the ALJ to address the issue in his

11   decision, and the Ninth Circuit has not published a decision on point.  However, this Court is

12   persuaded by a recent decision out of the Central District wherein it held that "the absence of any

13   indication in the record that the ALJ exercised his discretion to consider Plaintiff's borderline age

14   status and determine whether to apply the higher age category precludes meaningful review of

15   the ALJ's decision under the substantial evidence standard."  *Aguilar v. Astrue*, 2010 WL

16   1999560 (C.D. Cal. 2010) (holding that the ALJ's application of the grids was not supported by

17   substantial evidence and warranted reversal; adhering to reasoning of *Schiel v. Comm'r of Social*

18   *Sec.*, 267 Fed. Appx 660, 2008 WL 467773 (9th Cir. 2008); relying on *Daniels v. Apfel*, 154 F.3d

19   1129 (10th Cir. 1998), *Kane v. Heckler*, 776 F.2d 1130 (3d Cir. 1985)); *see also Pickard v.*

20   *Comm'r of Soc. Sec.*, 224 F.Supp.2d 1161 (W.D.Tenn. 2002).

21   Here, there is no indication in the record that the ALJ considered Plaintiff's borderline

22   age status.  The ALJ simply found that "[t]he claimant was born on March 13, 1953 and was 52

23   years old, which is defined as an individual closely approaching advanced age, on the alleged

24   disability onset date," and, "[b]ased on a residual functional capacity for the full range of light

25   work, considering the claimant's age, education, and work experience, a finding of "not

26   disabled" is directed by Medical-Vocational Rule 202.13." AR 23.  In determining whether a

27   borderline situation existed, the disability onset date was the incorrect date to use.  The ALJ

28

should have considered the date of the decision and found Plaintiff to be 54 years old, only two

months and five days from age 55.  *See Russell*, 856 F.2d at 83.

In light of the foregoing, the ALJ's application of the grids is not supported by substantial

evidence and warrants reversal and remand for the limited purpose of resolving this issue.  If, on

remand, a borderline situation is found to exist, the ALJ must consider whether to use the older

age category after evaluating the overall impact of all the factors of Plaintiff's case, pursuant to

20 C.F.R. 404.1563(b).

### F.    *Plaintiff's Credibility*

Lastly, Plaintiff argues that the ALJ improperly rejected his subjective complaints

because the ALJ failed to identify the specific evidence that establishes Plaintiff's testimony is

not credible.  Defendant counters that the ALJ properly considered Plaintiff's subjective

complaints.

The ALJ is required to make specific findings assessing the credibility of plaintiff's

subjective complaints.  *Ceguerra v. Secretary of Health & Human Services*, 933 F.2d 735, 738

(9th Cir. 1991).  "An ALJ is not 'required to believe every allegation of disabling pain' or other

non-exertional impairment," *Orn v. Astrue*, 495 F.3d at 635 (citation omitted).  In rejecting the

complainant's testimony, "the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d at 834 (quoting

*Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).  Pursuant

to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of

claimant's pain and impairments is unreliable, the ALJ must make a credibility determination

with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony.  *Thomas v. Barnhart*, 278 F.3d at 958.  "The ALJ may consider at

least the following factors when weighing the claimant's credibility: '[claimant's] reputation for

truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her]

conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third

parties concerning the nature, severity, and effect of the symptoms of which [claimant]

complains."  *Id*.  (citing *Light v. Soc. Sec. Admin*., 119 F.3d 789, 792 (9th Cir. 1997)).  "If the

1  ALJ's credibility finding is supported by substantial evidence in the record, we may not engage

2  in second-guessing." *Id*.

3      Here, the ALJ identified the following reasons for finding Plaintiff's statements not

4  entirely credible:

5          When [Plaintiff] filed this claim, he was interviewed by telephone and the SSA
        interviewer did not report any difficulties. [Plaintiff] did not exhibit any problems with
6       hearing, breathing, understanding, concentrating, talking, or answering.
            In October of 2005, [Plaintiff] completed a pain questionnaire in which he
7       reported that he had been taking the medications Methocarbamol (muscle relaxant),
        Hydrocodone (for pain), and Acetaminophen (for pain) since April 29, 2005.  He also
8       reported that his medications caused drowsiness, dizziness, nausea, and the inability to
        concentrate.  Again, [Plaintiff] does not have a high volume of medical records and none
9       of the available records shows that he ever complained of side effects from his
        medications.
10          The evidence demonstrates that [Plaintiff] has been noncompliant in caring for his
        feet, although he has continually complained of diabetic-related symptoms of numbness,
11      and tingling.  He has attended a class about diabetes and has been counseled about the
        importance of caring for his extremities.  Yet, the evidence shows that he has participated
12      in dangerous activities such as mowing his lawn in bare feet.  Additionally, although
        physical therapy has been suggested to treat his low back pain, [Plaintiff] declined to
13      participate in June of 2005 and again in August of 2006.  The record does not indicate
        that he has made a concerted effort in his own exercise program of swimming in his pool.
14          [Plaintiff] is not a credible historian in that he initially testified that he had very
        successful carpal tunnel releases then testified that he has had problems with his hands
15      ever since the surgery.  The undersigned notes that [Plaintiff] uses exaggerated
        terminology when describing his symptoms.  He testified that even when he takes a
16      potent medication such as Vicodin, on a "bad" day he still has a pain level of 8/10 in his
        back.  A reasonable individual would believe that this level of pain in spite of medication
17      would be quite debilitating and cause him to be bedridden.  Therefore, the undersigned is
        not persuaded by [Plaintiff's] testimony that he has a "bad" day every other day.  Nor was
18      he persuasive when he testified that he is completely incapacitated by severe migraine-
        type headaches once or twice a month, and has diarrhea two or three times a week.  The
19      objective medical evidence does not support his testimony about such chronic severe side
        effects from his medications.
20          [Plaintiff] contradicted his own testimony about excruciating back pain and
        having "bad" days every other day when he also testified that he swims pretty much every
21      day or most of the time.

22  AR 22-23 (citations omitted).

23      The ALJ offered several examples of specific testimony by Plaintiff that the ALJ found

24  incredible, supported by specific evidence in the record.  He considered specific inconsistencies

25  between the record and Plaintiff's hearing testimony, his reputation for truthfulness, and his daily

26  activities.  *Thomas v. Barnhart*, 278 F.3d at 958.  The ALJ was not required to believe every

27  allegation of Plaintiff's disabling pain.  *Orn v. Astrue*, 495 F.3d at 635.  The ALJ did not

28

arbitrarily discredit Plaintiff's testimony.  Thus, the Court finds that the ALJ's credibility assessment is supported by substantial evidence and is free of error.

## CONCLUSION

Because the record is insufficient to support a finding as to whether Plaintiff's education provides for direct entry into skilled work, and a finding as to whether a borderline situation exists, substantial evidence does not support the Commissioner's decision that Plaintiff is not disabled.

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The ALJ shall make specific findings with regard to application of the grids in light of Plaintiff's age.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Terrence W. Campbell and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

**Dated:   June 25, 2010**          **/s/ Gary S. Austin**
                                                  UNITED STATES MAGISTRATE JUDGE